IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID A. KULIK,

        Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

        Defendant.

CIVIL ACTION
NO. 20-2344

**OPINION**

**Slomsky, J.**                                                                                                   **February 24, 2022**

## I.     INTRODUCTION

Before the Court are the Objections of Plaintiff David Kulik to the Report and Recommendation ("R&R") of United States Magistrate Judge Lynne A. Sitarski (Doc. No. 25). Plaintiff brought this action on February 2, 2021, seeking review of the decision of the Commissioner of the Social Security Administration denying Plaintiff's claim for Social Security Disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. ("the Act"). Kulik alleges that Defendant wrongfully denied his application for disability benefits under 42 U.S.C. § 405(g).

On March 16, 2021, the Court entered an Order (Doc. No. 19) referring Plaintiff's case to Magistrate Judge Sitarski for an R&R. On September 24, 2021, Judge Sitarski issued the R&R, finding that the decision of the Administrative Law Judge ("ALJ") to deny Plaintiff benefits was

---

[1] In accordance with Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant for Andrew Saul, the former Commissioner.

1

supported by substantial evidence and should be affirmed. (Doc. No. 23.) On October 22, 2021, Plaintiff filed Objections to the R&R. (Doc. No. 25.) On November 5, 2021, Defendant filed a response to Plaintiff's Objections. (Doc. No. 27.)

Pursuant to 28 U.S.C. § 636(b)(1), this Court has conducted a de novo review of the portions of the R&R to which objections have been made. After an independent review of the record and for reasons that follow, the Court will overrule Plaintiff's Objections (Doc. No. 25) and approve and adopt the R&R (Doc. No. 23) in its entirety.

## II. BACKGROUND

### A. Factual and Procedural Background

Plaintiff David A. Kulik, a fifty-six (56) year old man, was born on December 18, 1965. He was forty-nine (49) years old at the alleged onset of disability. (Administrative Record ("R.") at 19.) While at that time he was considered a younger individual, a category that includes ages eighteen (18) to forty-nine (49), he has since "changed age category to closely approaching advanced age." (Id. (citing 20 C.F.R. § 404.1563).) Plaintiff has past relevant work experience as a machine operator II, which is considered medium semi-skilled work, but Plaintiff actually performed "at the heavy to very heavy exertional level." (Id.)

On June 13, 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI"), alleging that February 1, 2015 was the date of the onset of his disability. Plaintiff claims he is unable to work due to degenerative disc disease of his lumbar spine, bilateral knee arthritis, and obesity. (Doc. No. 16 at 2.) His application was denied on August 9, 2017. (R. at 83–87.) On September 20, 2017, Plaintiff filed a request for a hearing. (R. at 89–91.)

On August 29, 2018, a hearing was held before ALJ Monica Flynn ("ALJ Flynn"). (R. at 11, 60.) The hearing was continued to afford Plaintiff the opportunity to obtain counsel. (R. at

59–70.) The hearing resumed on February 1, 2019, but before a different judge, ALJ Robert Ryan ("ALJ Ryan"). (R. at 43.) Despite the five-month continuance to obtain counsel, Plaintiff did not obtain counsel and proceeded pro se. (R. at 44.) In a decision issued the same day, ALJ Ryan found that Plaintiff was not disabled. (R. at 8–25.) On March 26, 2019, Plaintiff filed an appeal with the Appeals Council. (R. at 153–55.) ALJ Ryan's decision was affirmed and Plaintiff's request for review was denied by the Commissioner on March 19, 2020. (R. at 1–7.)

Plaintiff, now represented by counsel, filed a complaint in this Court on May 19, 2020. (Doc. No. 1.) On February 1, 2021, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Request for Review"). (Doc. No. 16.) The Commissioner filed a Response on March 3, 2021 (Doc. No. 18), and Plaintiff filed a reply on March 30, 2021. (Doc. No. 22.) This Court referred the matter to Judge Sitarski for a R&R. (Doc. No. 19.) After the R&R was issued, Plaintiff filed objections to the R&R on October 22, 2021 (Doc. No. 25), and Defendant responded on November 5, 2021. (Doc. No. 27.)

### B. Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If he does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, he is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

3

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his past relevant work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201–02 (3d Cir. 2019).

### C. The ALJ's Findings

At the second hearing, held on February 1, 2019, ALJ Ryan heard testimony from Plaintiff, who reported constant pain in his lower back which sometimes travels down his hips and legs. (R. at 47.) Further, Plaintiff reported receiving medication and physical therapy to treat his pain, and that the administered injections produced a positive result. (R. at 47–48.) Plaintiff also testified that he lives with his parents, and that he can do laundry, shop for food, vacuum, cook, and drive short distances. (R. at 50–52.) He testified that he was able to stand for a continuous period of half an hour, to sit for half an hour, and to walk up to a mile. (R. at 52.)

At step one, ALJ Ryan determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020, and that he had not engaged in substantial gainful activity since February 1, 2015, the alleged onset date. (R. at 13.)

At step two, ALJ Ryan found that Plaintiff suffered from the following severe impairments: degenerative disc disease of his lumbar spine, osteoarthritis of his right knee, and obesity. (Id.)

At step three, ALJ Ryan determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404., Subpart P, Appendix 1. (R. at 14.) As noted by ALJ Ryan, Plaintiff's impairments did not meet the severity of the impairments listed in the regulations:

> Particular attention was given to medical listing 1.02 for major dysfunction of a joint. However, the specified criteria required of the [regulatory] listing was not demonstrated by the available medical evidence. Specifically, the listing requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint. The listing also requires involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively as defined in 1.00B2b. In this case, the evidence does not demonstrate

5

> that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b.
>
> Further, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04. Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b).

(R. at 14.) While ALJ Ryan noted that "there is no specific medical listing regarding obesity," he acknowledged that "[o]besity in combination with other impairments may or may not increase severity" and affirmed that he "has fully considered obesity in the context of the overall record [of] evidence in making this decision." (Id.) Despite Plaintiff's severe impairments, and other non-severe impairments (R. at 13), ALJ Ryan concluded that his impairments did not rise to the level required by the Social Security Administration's medical listings. (R. at 14.)

At step four, ALJ Ryan concluded that Plaintiff had the "residual functional capacity" ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [C]laimant can lift or carry ten pounds frequently and twenty pounds occasionally; can sit for a total of four hours in a workday, but not more than thirty minutes at a time; can walk a total of four hours but not more than thirty minutes at a time; and can stand for a total of four hours but not more than thirty minutes at a time.

(R. at 14.) These limitations prevent Plaintiff from performing his past relevant work, but do not bar light work.

At step five, ALJ Ryan found that Plaintiff is not disabled. (R. at 19.) Furthermore, considering Plaintiff's age, education, work experience, and RFC, ALJ Ryan concluded that there are jobs that exist in the national economy that Plaintiff can perform. (R. at 20.) Finally, ALJ Ryan found that Plaintiff had not been disabled, as defined by the Social Security Act, from February 1, 2015 through February 26, 2019, the date of the ALJ's decision. (R. at 20–21.)

### III. STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) (citing Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)); Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence is "more than a mere scintilla," and consists of "such relevant evidence as a reasonable mind might accept as adequate." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). The Court also must determine whether the ALJ applied the proper legal standards in evaluating a claim of disability. McHerrin v. Astrue, No. CIV. A. 09-2035, 2010 WL 3516433, at *2 (E.D. Pa. Aug. 31, 2010) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

### IV. ANALYSIS

In his Objections (Doc. No. 25), Plaintiff asserts: (1) the ALJ failed to ensure that he had purposefully waived his right to counsel and also failed to discharge his duty to aid Plaintiff as a pro se claimant in developing the record; and (2) the ALJ's findings erroneously deviated from the medical opinion of certified registered nurse practitioner ("CRNP") Maureen Gardo, who opined that Plaintiff's physical abilities are limited. Both objections are entitled to de novo review by this Court. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). The Court will address each objection in turn.

### A. The Court will Overrule Plaintiff's First Objection.

In his first objection, Plaintiff contends that the Magistrate Judge failed to adequately address Plaintiff's argument in two ways. First, Plaintiff argues that Magistrate Judge Sitarski's R&R failed to consider whether he had knowingly waived his right to counsel. (Doc. No. 25 at 7.) Second, Plaintiff argues that the ALJ did not fully develop the record in light of Plaintiff's pro se status by failing to elicit sufficient testimony from Plaintiff and by failing to assist Plaintiff in developing his case. (Id. at 8–9.) He claims that Judge Sitarski erred in finding to the contrary.

#### 1. The ALJ did not err by proceeding with the hearing despite Plaintiff's unrepresented status.

Plaintiff's argument that ALJ Ryan erred by proceeding with the second hearing despite Plaintiff's pro se status is incorrect. Plaintiff was afforded an opportunity to obtain counsel by ALJ Flynn (R. at 62–64), did not do so (R. at 44), and does not provide any reason for his failure to obtain counsel prior to the second hearing. Therefore, ALJ Ryan did not err by proceeding with the second hearing even though Plaintiff was not represented.

Social Security claimants have a statutory and regulatory right to counsel at administrative hearings. Phifer ex rel. Phifer v. Commr. of Soc. Sec., 84 Fed. App'x 189, 190 (3d Cir. 2003). Such claimants must be given notice of that right, but may waive it if the waiver is knowing and intelligent. Sesko v. Commr. Of Soc. Sec., No. 08-0151, 2009 WL 2579304, at *9 (W.D. Pa. 2009). The Third Circuit Court of Appeals on occasion applies the Seventh Circuit's standard to require ALJs to explain "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to twenty-five percent of past due benefits and required court approval of the fees." Vivaritas v. Commr. Of Soc. Sec., 264 Fed. App'x 155, 157 n.1 (3d Cir. 2008) (citation omitted). The Social Security Administration's internal policies require ALJs to inform a pro se claimant of their right to

representation and allow the claimant one postponement of the administrative hearing to obtain a representative. HALLEX I-2-6-52(B); HALLEX I-2-1-80(B)(2). The ALJ may grant additional postponements for good cause. Id.; Social Security Ruling (SSR) 91-5p, 1991 WL 208067, at *1 (S.S.A. July 1, 1991).

Here, at Plaintiff's first administrative hearing, ALJ Flynn[2] explained to Plaintiff his right to counsel or to have a representative present to assist him. (R. at 62–64.) ALJ Flynn explained the manner in which an attorney could aid Plaintiff in presenting his case and the possibility of free counsel or a contingency arrangement. (Id.) Plaintiff indicated that he had considered obtaining counsel and had talked to an attorney, but that there had been insufficient time for counsel to prepare for the first hearing. (R. at 64.) ALJ Flynn responded by granting a continuance and advised Plaintiff to obtain counsel quickly. (R. at 64–65.)

At Plaintiff's second administrative hearing, Plaintiff appeared without counsel again. ALJ Ryan addressed the matter of counsel with Plaintiff, reminding him that only one adjournment was allowed without special circumstances, and he had already received an adjournment of his first hearing. (R. at 44.) In response, Plaintiff alleged no mental limitations or unusual circumstances that would have led ALJ Ryan to suspect that Plaintiff had not understood his right to counsel or that something had prevented him from obtaining counsel. Id.

Thus, based upon these facts, it is evident that at Plaintiff's first administrative hearing, ALJ Flynn properly informed Plaintiff of his right to counsel and granted him a postponement to allow him to obtain representation. (R. at 62–64.) See Cole v. Soc. Sec. Admin., 2008 WL

---

[2] As noted supra, ALJ Monica Flynn ("ALJ Flynn") presided over Plaintiff's first administrative hearing. (R. at 11, 60.) After Plaintiff was granted a continuance to obtain counsel, ALJ Robert Ryan ("ALJ Ryan") presided over Plaintiff's second administrative hearing. (R. at 43–44.) After the second hearing, ALJ Ryan issued the decision which is subject to review in this case. (R. at 21.)

9

5157919, at *5 (E.D. Pa. 2008) (finding claimant knowingly waived right to counsel where ALJ informed her of her right to representation and offered to continue the case). And in addition to ALJ Flynn advising Plaintiff to obtain counsel (R. at 64-65), Plaintiff had received a "Notice of Hearing" months before his second administrative hearing also informing him of his right to representation. (R. at 138.) See Phifer ex rel. Phifer v. Comm. Soc. Sec., 84 Fed. Appx. 189, 190-91 (3d Cir. 2003) (waiver of right to counsel was knowing and intelligent where claimant received notice of this right through two letters from SSA and where ALJ asked at hearing if claimant wanted to proceed without an attorney).

Here, regardless of these promptings from ALJ Flynn and the "Notice" he received, Plaintiff neglected to obtain counsel before his second hearing. (R. at 31.) Plaintiff did not indicate at his second hearing before ALJ Ryan, nor does he allege now, that there was in fact a reason for his failure to obtain counsel that would constitute good cause for a second adjournment. (See Doc. No. 25.) Further, Plaintiff did not request a second adjournment or give any indication to ALJ Ryan at the second hearing that he wished to have counsel present for the hearing. (R. at 44.) Therefore, ALJ Ryan did not err by proceeding with the second hearing despite Plaintiff's unrepresented status and Magistrate Judge Sitarski's finding in this regard will be approved and adopted.

### 2. The ALJ adequately developed the record.

Plaintiff next argues that the ALJ failed to sufficiently develop the record and assist Plaintiff in developing his case. (Doc. No. 16 at 8.) The Court disagrees. In making the determination that Plaintiff could complete light work, ALJ Ryan considered all of Plaintiff's impairments, and questioned him thoroughly about how his impairments impacted his functional abilities. (R. at 45–46.) Therefore, ALJ Ryan rightly discharged his duty to develop the record and Plaintiff did not suffer prejudice due to his pro se status.

The law supports this decision. Lack of representation at an administrative hearing by itself is not a basis for remand; the absence of counsel must have resulted in "clear prejudice or unfairness" to the claimant. See Brandt v. Berryhill, 2018 WL 1093313, at *3 (E.D. Pa. 2018); Dombrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979). If a claimant is pro se at the administrative hearing the ALJ must assume a more active role in developing the evidentiary record and must do so with special care. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003); Dombrowolsky, 606 F.2d at 407; see also Smith v. Harris, 644 F.2d 985, 989 (3d Cir. 1981) ("Particularly where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care."). "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts.'" Reefer, 326 F.3d at 380 (citation omitted).

There is no prescribed procedure for achieving this heightened level of care; rather the ALJs efforts must simply be "not wholly inadequate under the circumstances." Id. at 326 (citation omitted). The issue a court must address is whether the record reveals evidentiary gaps that result in prejudice to the claimant. See Comiskey v. Astrue, No. 09-0252, 2010 WL 308979, at *7 (E.D. Pa. 2010) ("[R]emand is appropriate when the ALJ has failed . . . to fill significant evidentiary gaps that are material to the disability determination.").

A review of the ALJ's decision reveals detailed consideration of the medical record. Plaintiff has not identified any impairments or medical treatment history that the ALJ failed to address. Rather, the ALJ ordered additional medical records be produced on behalf of Plaintiff. (R. at 63.) See Smythe v. Colvin, 2013 WL 3340660, at *14 (W.D. Pa. 2013) (finding ALJ did not violate duty to claimant where ALJ asked numerous questions regarding plaintiff's impairments and plaintiff did not point to any condition that the ALJ did not address). Absent a showing that

11

the ALJ failed to consider one or more of Plaintiff's impairments, Plaintiff has not established that he was prejudiced by the ALJ's alleged failure, if any even existed, to develop the record. Id. ("As Plaintiff cannot point to any condition not sufficiently addressed, this Court defers to the ALJ's credibility determination."); Salazar v. Colvin, 2014 WL 6633217, at *4, n.4 (finding ALJ did not fail in his duty to develop record where Plaintiff could not point to any condition not sufficiently addressed by other evidence in the record). Although Plaintiff insists here that the ALJ did not ask sufficient follow-up questions, "[t]he pro se status of a claimant does not convert the ALJ's role into that of the claimant's advocate." Pryor v. Astrue, 2009 WL 890581, at *4 (W.D. Pa. 2009) (citation omitted).

Because Plaintiff knowingly waived his right to counsel and because the ALJ sufficiently discharged his duty to develop the record, Plaintiff did not suffer prejudice due to his pro se status. Therefore, relief on this ground will be denied and Judge Sitarski's R&R on this claim will be approved and adopted.

### B. The ALJ Did Not Err in His Assessment of Certified Nurse Practitioner ("CRNP") Gardo's Medical Opinion or Plaintiff's Residual Functional Capacity ("RFC").

Plaintiff next argues that the ALJ erred by finding the medical opinion of CRNP Gardo on Plaintiff's limitations unpersuasive. (Doc. No. 16, at 10–20.) At Plaintiff's second administrative hearing, CRNP Gardo opined that Plaintiff's movement was severely limited. (See R. at 18–19.) For example, she testified that Plaintiff could not carry or lift over ten pounds, could not lift overhead or reach out in front with any associated weight, and could not perform any gainful employment on a continuous and sustained basis. (R. at 18.) Plaintiff claims that CRNP Gardo's opinion was consistent with the medical records and that by rejecting her opinion (id. at 12–17), ALJ Ryan had no medical basis for the RFC he reached. (Id. at 17–20.) But the ALJ is not bound by law to adopt the medical opinion of any particular physician. Where, as here, the ALJ has

explained, with substantial evidence, his reason for departing from one physician's opinion, he commits no error.

The ALJ is responsible for making the disability determination. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). In making that determination, the ALJ is "free to accept some medical evidence and reject other evidence," so long as he provides an explanation for discrediting the rejected evidence." Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir. 2014); 20 C.F.R. §§ 404.1527, 416.927. The ALJ is tasked with evaluating the persuasiveness of the medical opinion using factors such as supportability and consistency. 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Once this evaluation is completed, the ALJ next determines the claimant's RFC. The RFC determines "what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of [his] medically determinable impairment(s)." SSR 83-10, 1983 WL 31251, at *7. The ALJ must include all credibly established limitations in the RFC. Ramirez v. Barnhart, 372 F.3d 546, 553 (3d Cir. 2004) (citation omitted). But the ALJ may reach his RFC determination without outside medical expert review of each fact incorporated into the decision. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011).

Here, the ALJ found CRNP Gardo's medical opinion unpersuasive. (R. at 18.) The ALJ reasoned that CRNP Gardo's opinion was inconsistent with the evidence in the record which showed that Plaintiff was in no acute distress and that his gait, station, muscle strength and tone, and reflexes were normal. (R. at 18.) Plaintiff argues in response that the ALJ ignored or mischaracterized other evidence that would support CRNP Gardo's opinion. (Doc. No. 25 at 6.) To the contrary, the ALJ discussed findings from Plaintiff's other physicians over the course of his

treatment from 2016 through 2018. (R. at 16.) Relying on the balance of the medical evidence, the ALJ concluded that Plaintiff's condition was well-controlled by his medication. (R. at 13.)

Plaintiff alleges that the ALJ engaged in "cherry-picking" of evidence for failing to mention certain passages from CRNP Gardo's opinion, including its reference to Plaintiff's treatment notes and patient questionnaires. (Doc. No. 16 at 14.) This argument fails for two reasons. First, there is no legal requirement that the ALJ specifically mention or refer to every piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (3d Cir. 1998). Second, ALJ Ryan considered much of the evidence that Plaintiff argues was ignored or mischaracterized. (R. at 15–16.) The mere fact that the ALJ did not cite to one particular physical therapy evaluation or to a single patient questionnaire in the voluminous record in this case does not equate to "cherry-picking" or ignoring evidence.

Finally, Plaintiff's claim that the ALJ had no medical basis for his RFC is without merit. "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Impink v. Berryhill, 2019 WL 1576757, at *17 (E.D. Pa. 2019) (citation omitted). Here, ALJ Ryan clearly explained, based on substantial evidence, that the medical record showed Plaintiff's impairments were greater than some medical opinions suggested and less than others. (R. at 14–19.) Thus, even though no physician made the particular findings that he adopted, the ALJ's RFC is supported by substantial evidence.

Accordingly, the ALJ did not err in his assessment of CRNP Gardo's medical opinion or of Plaintiff's RFC. Therefore, Plaintiff's Objections (Doc. No. 25) will be overruled. The R&R will be approved and adopted on this claim.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the R&R (Doc. No. 25) are overruled. The Report and Recommendation (Doc. No. 23) will be approved and adopted in its entirety. An appropriate Order follows.